| | |
|---|---|
| **Fill in this information to identify the case:** | |
| Debtor name | **T-Rex Sports, LLC** |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF PENNSYLVANIA |
| Case number (if known) | **24-12402** |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11        02/20

__T-Rex Sports, LLC__'s Plan of Reorganization, Dated __February 10, 2025__

**Background for Cases Filed Under Subchapter V**

    A. **Description and History of the Debtor's Business**

        T-Rex Sports, LLC (the "Debtor") operates in the "trading card" collectibles market. Previously, we specialized in sporting goods -- but other than leftover inventory (*about half of our inventory level*), we no longer operate in the sporting goods industry. Our revenue comes from buying and selling trading cards in the "sports," "non-sports" and "gaming" categories.

        Inside of these categories, our revenue comes from buying and selling individual cards -- as well as procuring allocations of new products that are releasing. Procuring allocations is a long and expensive process, but it can pay off massively in the long run.

        The business had been growing by leaps and bounds. I was growing it aggressively, and reinvesting every dollar we brought in to create more growth.

        In February 2020, I got the idea to expand our business from just the "hobby" side of allocated product, to the "retail" side as well. The "retail" side deals in much larger quantities, but smaller profit margins. I saw this as a logical step to our growth and a market that we could do very well in. In no time, I was approached by a customer to start purchasing retail products from me at set pricing. We sold him product in this manner for several months, with no issues. In the summer of 2020, I was approached again with an offer to change our agreement. Instead of purchasing from us at set pricing, he wanted to partner with me in the retail segment. We would use my ability to secure product, he would fund the purchases -- and we would split the profits fifty-fifty (50/50). We began doing things this way, and for a while it seemed like an amazing agreement for both of us. Unfortunately, it became the slow destruction of the Debtor.

        Everything worked very smoothly up until July 2021. We would get a product, sell it and the money would be wired to me -- and we would move onto the next product. For about a year, I would get paid for new products that were releasing, but not the profits from the previous sales. One excuse led to another, which led to another. Still, I never really thought I would not get paid. I just figured it was a matter of time.

        Then, in August 2022, a product was released that my customer had placed an order of nearly $200,000. I started reaching out to him to wire me the funds for the product. I did not get a response. Day after day, I reached out. I called, e-mailed, texted -- all to be ghosted and not get a response. When I finally did get a response weeks later, he tried to tell me that he had never ordered this product -- and would not pay for it.

        At that point in time, we had about $400,000 in product that was sitting at our distributor. To this day two and a half years later, we still have about eighty-five (85%) percent of it sitting in a warehouse. No one wants it -- at really any price. I had to scramble to find a way to come up with not only $400,000 to pay for the product, but also rebuild and restructure the logistics of that business on the fly. During this same time period, the industry had a huge market correction and overall values of cards dropped by probably an average of forty (40%) percent. This cost the business a huge sum of money and more losses piled onto the cash shortage issues. The Debtor was forced to borrow money at high interest rates to get through. I was promised that all of the Debtor's profits, plus the pay back for everything the Debtor had covered along the way would be coming pretty soon. So I borrowed money -- at very high rates, and started to reorganize the business and keep it afloat. Three months turned into six months, six months turned into nine months -- and it just kept going and going. Broken promise after broken promise. The payments on the debt were absolutely devastating and the Debtor had to take out more financing to survive.

        This became a common theme. I would work endlessly on securing a term loan at a normal interest rate that would be affordable for repayment -- but I would get denied at the last minute and offered high-interest rate short term loans instead. These lenders would call me nearly every day to offer me funds and make promises that if I did this -- they would do a term loan for me in a few months. Multiple times the Debtor was about to fail -- and I influxed cash from my personal account to keep it afloat. I worked as hard as

| Debtor | T-Rex Sports, LLC | Case number (*if known*) | 24-12402 |
|---|---|---|---|
| | Name | | |

physically possible to fix all of the issues and pull myself out of this mess.

The road to recovery and sustainability after filing for bankruptcy protection has been a very long one. I waited until I basically had nothing left from a capital perspective. I kept trying and trying to find a way out. I had to start from literally next to nothing to rebuild this company from the ground up again -- it nearly destroyed me and my marriage. It has been a very long process, but we are back on solid ground again. This company has always been my pride and joy, and I am proud to say that we are back to doing normal business again. I sincerely look forward to making the payments on my plan each and every month... I sincerely look forward to making the payments on my plan each and every month.

**B. Liquidation Analysis**

To confirm the Plan in accordance with 11 U.S.C. § 1191(a), this Honorable Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation proceeding. A liquidation analysis is attached to the Plan as Exhibit A.

**C. Ability to make future plan payments and operate without further reorganization**

Pursuant to 11 U.S.C. § 1190(1)(C), the Debtor must also show that it will have enough cash over the life of the Plan to make the requisite Plan payments and operate the Debtor's business. The Debtor has prepared a projected financial information analysis as Exhibit B -- which consists of a projected five (5) year cash flow analysis, along with a breakdown of the Debtor's necessary business expenses, including the requisite pro-rata payments to the unsecured creditors.

The Debtor's financial information projections show that the Debtor will have projected monthly disposable income (*as defined by 11 U.S.C. § 1191(d)*) for the period described in § 1191(c)(2) of $3,000.

**Article 1: Summary**

This Plan under Chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from the cash flow of the Debtor and future income to be received from the future sales.

This Plan provides for:   **0**  classes of priority claims;
  **0**  classes of secured claims;
  **1**  classes of non-priority unsecured claims; and
  **0**  classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately eight (0.08) cents on the dollar from the monthly payments to be made under this Plan. The Plan also provides for the payment of administrative claims.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2: Classification of Claims and Interests**

2.01   **Class 1**   Class 1 consists of the following claims, to the extent allowed as non-priority unsecured claims under 11 U.S.C. § 502:

Class 1 shall consist of all allowed non-priority unsecured claims. Each holder of a Class 2 claim shall be paid from the Debtor's Disposable income over a five (5) year period pursuant to the terms of the Plan.

**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01   **Unclassified claims**   In accordance with 11 U.S.C. § 1123(a)(1), administrative expense claims have not been classified and thus are excluded from the Claims and Interests set forth in Article II of the Plan.

| | | |
|---|---|---|
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 shall be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| | | In the event this Plan is confirmed non-consensually in accordance with 11 U.S.C. § 1191(b), each holder of an administrative expense claim under 11 U.S.C. § 503 shall be paid in full in quarterly installments over a three (3) year period after the Effective Date of the Plan -- beginning thirty (30) days after the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. |
| 3.03 | **Priority tax claims** | There are no priority tax claims against the Debtor pursuant to 11 U.S.C. § 507(a)(8). |
| 3.04 | **Statutory fees** | Not applicable. |
| 3.05 | **Prospective quarterly fees** | Not applicable. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | Class 1 shall consist of all allowed non-priority unsecured claims. Each holder of a Class 1 claim shall be paid from the Debtor's disposable income over a five (5) year period pursuant to the terms of the Plan. |

## Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim** | A "Disputed Claim" is a claim that has not been allowed or disallowed by a final non-appealable Order, and as to which either: |
| | | (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or |
| | | (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim** | No distribution shall be made on account of a disputed claim unless such claim is allowed by a final non-appealable Order. |
| 5.03 | **Settlement of disputed claims** | The Debtor shall have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes the following executory contracts and/or unexpired leases as of the Effective Date of the Plan: |
| | | (i) Unexpired Lease for 800 Main Street, Suite 103, Hellertown, PA 18055-1535 |
| | | Landlord: Melissa Parsons<br>Term: 12 months beginning on September 1, 2024<br>Rent: $1,500.00 per month. |

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the Order confirming this Plan.

### Article 7: Means for Implementation of the Plan

Please refer to Paragraphs A, B, C and Article 4.01 above.

### Article 8: General Provision

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used, but not otherwise defined, in this Plan. |
| 8.02 | **Effective Date** | The "Effective Date" of this Plan is the first business day following the date that is 14 days after the entry of the Confirmation Order. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date shall be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Pennsylvania govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.07 | **Corporate Governance** | The provisions of 11 U.S.C. § 1123(a)(6) are satisfied in that the Plan does not contemplate or allow for the issuance of non-voting equity securities or a change in any voting powers. |

| Debtor | T-Rex Sports, LLC | Case number (*if known*) | 24-12402 |
|---|---|---|---|
| | Name | | |

**8.08  Retention of Jurisdiction**  The Court shall retain jurisdiction of this case after the Confirmation Date for the following purposes:

(a) To determine any and all objections in the allowance of claims and amendments to schedules;

(b) To classify the claim of any Creditor and to re-examine claims which have been allowed for purposes of voting, to determine such objections as may be filed to claims;

(c) To determine any and all disputes arising under or in connection with the Plan, the sale of any of the Debtor's assets, collection or recovery of any assets;

(d) To determine any and all applications for allowance of compensation and reimbursement of expenses herein;

(e) To determine any and all pending applications for rejections of executory contracts and unexpired leases and the allowance of any claims resulting from the rejection thereof or from the rejection of executory contracts or unexpired leases pursuant to the Plan;

(f) To determine any and all applications, adversary proceedings and contested and litigated matters pending in the case as of, or after, the Confirmation Date;

(g) To determine any and all proceedings for recovery of payments pursuant to any cause of action;

(h) To modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

(i) To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes, intent and effect of the Plan;

(j) To determine such other matters which may be provided for in the Confirmation Order as may be authorized under the provisions of the Bankruptcy Code;

(k) To enforce all discharge provisions under the Plan;

(l) To enter any order, including injunctions, necessary to enforce the terms of the Plan, the powers of the Debtor under the Bankruptcy Code, this Plan and as the Court may deem necessary; and

(m) To enter a Final Order closing this case.

### Article 9: Discharge

If the Debtor's Plan is confirmed under 11 U.S.C. § 1191(a), on the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of this Plan, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in 11 U.S.C. § 1141(d)(6).

If the Debtor's Plan is confirmed under 11 U.S.C. § 1191(b), confirmation of this Plan shall not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in 11 U.S.C. § 1192.  The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first three (3) years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or

(ii) excepted from discharge under 11 U.S.C. § 523(a), except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### Article 10: Other Provisions

None.

| Debtor | **T-Rex Sports, LLC** | Case number (*if known*) | **24-12402** |
|---|---|---|---|
| | Name | | |

Respectfully submitted,

**X**  |s| *Robert Parsons*             **Robert Clyde Parsons**
[Signature of the Plan Proponent]             [Printed name]

**X**  |s| *Paul B. Maschmeyer*             **Paul B. Maschmeyer**
[Signature of the Attorney for the Plan Proponent]             [Printed name]